IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IMS Health Incorporated　　　　　　　　　　　:
660 West Germantown Pike　　　　　　　　　 :
Plymouth Meeting, PA  19462,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　　　　　　:
Thomas J. Welch d/b/a　　　　　　　　　　　　:
Welch Consulting, Inc.　　　　　　　　　　　　 :　Civil Action No.
335 East Edgewater Way　　　　　　　　　　　:
Newark, DE  19702　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　**JURY TRIAL DEMANDED**
　　　　　　and　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
Thomas J. Welch, an individual　　　　　　　　:
335 East Edgewater Way　　　　　　　　　　　:
Newark, DE  19702,　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Defendants　　　　　　　　　　　　　:

## COMPLAINT

### Parties

　　　　1.　　Plaintiff, IMS Health Incorporated ("IMS Health"), is a corporation organized and existing under the laws of the State of Delaware, with its worldwide headquarters located in Fairfield, Connecticut, and its principal place of business in the United States located at 660 West Germantown Pike, Plymouth Meeting, Pennsylvania 19462.

　　　　2.　　On information and belief, Defendant Thomas J. Welch d/b/a Welch Consulting, Inc. ("WCI") is a non-incorporated company with its principal place of business located at 335 East Edgewater Way, Newark, Delaware 19702.

　　　　3.　　On information and belief, Defendant Thomas J. Welch ("Welch") is a citizen of the State of Delaware residing at 335 East Edgewater Way, Newark, Delaware 19702.

## Jurisdiction and Venue

4.      Count I of this action is for federal unfair competition under the United States Trademark (Lanham) Act of 1946, as amended.  The remaining Counts are as follows:

| Count II | Misappropriation and Misuse of Trade Secrets |
| Count III | Breach of Contract |
| Count IV | Breach of Fiduciary Duty |

5.      Jurisdiction is proper pursuant to 15 U.S.C. §§ 1117, 1121 and 1125 and 28 U.S.C. §§ 1331 and 1338, and under the laws of the United States concerning supplemental jurisdiction, 28 U. S. C. § 1367.

6.      Defendants have, within and outside the Commonwealth of Pennsylvania, and within this judicial district, transacted business and committed the acts alleged in this Complaint.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).  A substantial part of the events giving rise to the claims occurred in this district, and Defendants are subject to personal jurisdiction in this District.

## Background

8.      IMS Health is the world's leading provider of information products and services to the pharmaceutical and healthcare industries.  The services that IMS Health provides to its customers include, among other things, market research services for prescription and over-the-counter pharmaceutical products, sales management information services for targeting physicians and others who write prescriptions (collectively, "Prescribers"), and consulting services to pharmaceutical companies relating to information technology and data warehousing.

9.      IMS Health's clients consist primarily of pharmaceutical companies, government agencies, academic institutions, managed care organizations, biotech companies and

financial services firms. These entities look to IMS Health for, among other things, derived information relating to the prescribing behavior of physicians and others ("Prescription Information"), such as physicians' assistants and nurse practitioners, who are licensed by state medical boards to write for pharmaceuticals. These entities also look to IMS Health for its information technology expertise in determining how to warehouse and utilize Prescription Information and other information in their internal computer systems.

10. To assist IMS Health in providing its information products and services, IMS Health has developed and presently maintains several confidential customer contact lists, including a customer contact list for its consulting services. Employees within IMS Health's consulting services business unit are tasked with maintaining a confidential repository of existing and potential client contact information, including as applicable the names of IMS Health contacts, addresses, phone numbers, e-mail addresses, titles, and other information related to the individual (hereinafter the "Client Contact List").

11. The development of new client contact information in the pharmaceutical industry takes a great deal of time and skill, requiring in part many IMS Health sales personnel to consistently meet and carefully identify new potential contacts, and continually work to turn those potential contacts into business contacts. The Client Contact List reflects the results of this hard labor.

12. IMS Health uses the Client Contact List for many purposes, including, but not limited to, marketing and sales, and more specifically for the generation of extensive and/or selected mailings announcing and/or offering existing clients or potential clients new or modified products and/or services available from IMS Health. Often times, IMS Health marketing

materials are mailed to well-defined subsets of IMS Health clients, with specific materials being tailored for presentation to particular clients.

13. Accordingly, the Client Contact List, with its large compilation of carefully selected and updated client contacts developed with great effort and investment gives IMS Health a significant advantage over its competitors and more specifically provides IMS Health with a wealth of knowledge and business assets not available to anyone else in the pharmaceutical and health care industries.

14. The Client Contact List is not publicly available or accessible, and is not known outside IMS Health. The Client Contact List is a trade secret owned by IMS Health.

**Thomas Welch and Welch Consulting, Inc.**

15. Welch is a former employee of IMS Health. On information and belief, Welch began his relationship with IMS Health in or around May 1994, as an independent consultant. That relationship expanded in or around February 1997, when Welch became a full time employee of IMS Health, at it office in Plymouth Meeting, Pennsylvania.

16. On February 14, 1997, Welch executed and entered into a written Confidentiality & Policy Agreement (the "Agreement") with IMS Health agreeing not to disclose confidential IMS Health information. A Copy of the Agreement is attached as Exhibit "A."

17. According to the Agreement, Welch agreed that while working at IMS Health "as well as any time after [his] employment" he would "not disclose confidential IMS [Health] information to anyone outside of IMS [Health]" nor "use such information for [his] own personal benefit."

18. The Agreement defines "Confidential information" as including "business information regarding . . . customer lists" and "knowledge of future activities within IMS [Health] such as products or services in research and development marketing plans."

19. On information and belief, in or around July 15, 2002, Welch was also informed about and provided a copy of a revised version of IMS Health's Policy on Business Conduct ("the "Policy"), a copy of which is attached as Exhibit "B." On information and belief, Welch had access to earlier versions of the Policy prior to July 15, 2002.

20. The Policy states that IMS Health employees owe a duty of loyalty to IMS Health, and "must not be in a position where [] personal or outside business interests could affect decisions made on behalf of [IMS Health]." Where an employee is "about to enter into a transaction that could be viewed as a conflict of interest by employees, customers, vendors or other parties," the Policy provides that the employee "must promptly notify [his] manager in writing ... in advance of entering the transaction." Policy, p. 11.

21. In addition, the Policy includes a clear non-competition clause, stating that employees "may not sell a product or perform a service in competition with IMS [Health], and [] cannot perform services outside of [IMS Health] ... if IMS [Health] provides that service or a related service in the marketplace." Policy, p. 14.

22. On information and belief, Welch began contacting IMS Health customers listed in the Client Contact List in early 2002 for the purpose of soliciting personal business from them while he was employed at IMS Health. For example, in or around March 4, 2002, Welch sent an electronic mail from his IMS Health electronic mail address to Mr. Edward Tunstall of Eli Lilly & Co. ("Lilly"). The communication informed Mr. Tunstall that Welch's "relationship with IMS [Health] will change in the next couple of months" at his own initiative, and inquired

whether he could continue a "relationship with Lilly without IMS [Health] being a part of the relationship." A copy of this electronic mail is attached as Exhibit "C."

23. On information and belief, Welch informed IMS Health clients during his employment that "alternative option[s]" were available for the very services that IMS Health was providing. For example, in or around August 21, 2002, Welch sent an electronic mail from his IMS Health electronic mail address to Mr. Justo Moreno of Lilly, and suggested that Lilly use such alternatives "in future negotiations with IMS [Health]," for what was a Latin American data warehouse project. A copy of this electronic mail is attached as Exhibit "D." IMS Health was not awarded this project.

24. On information and belief, Welch set up WCI, as a conduit for furthering his scheme to unfairly compete with IMS Health using IMS Health trade secret information. On information and belief, Welch and WCI have in the past and continue to send out proposals to IMS Health customers listed in IMS Health's Client Contact List for services that are in direct competition with IMS Health. On information and belief, Welch and WCI learned of the existence of such customers and such business opportunities due to Welch's employment at IMS Health. On information and belief, several of such proposals were transmitted by Welch from his IMS Health electronic mail address, and included an electronic notation indicating that IMS Health was the source of the document.

25. On information and belief, Welch notified IMS Health customers listed in IMS Health's Client Contact List in late 2002 from his IMS Health electronic mail address that he had terminated his relationship with IMS Health, and solicited personal business from them that he would not have known of but for his previous employment at IMS Health. For example, in or around November 27, 2002, Welch sent an electronic mail to Ms. Marlene Griffin-Bunnell

of Lilly to "insure that there is no impact on [his] current project." A copy of this electronic mail is attached as Exhibit "E."

### Damages Caused by Thomas Welch and Welch Consulting, Inc.

26. On information and belief, Welch and WCI have provided services to IMS Health's customers using IMS Health's Client Contact List to the detriment of IMS Health.

27. For example, in or around July 15, 2002, during Welch's employment with IMS Health, Lilly had engaged IMS Health to provide an "Information Infrastructure Assessment Process and Blue Print Template" for a cost of $23,400. A copy of a July 15, 2002, statement of work reflecting this engagement is attached as Exhibit "F." On information and belief, the engagement involved an examination of one of Lilly's manufacturing processes in order to generate a map or blue print of the process showing, among other things, what data was utilized in that manufacturing process.

28. On information and belief, Welch delivered a blueprint on behalf of IMS Health to Lilly in or around late October or early November 2000, reflecting approximately one half of the work for the Lilly engagement. On information and belief, Lilly was charged $11,700, i.e., one half of the $23,400 total cost, for such work by IMS Health.

29. In or around January 8, 2003, IMS Health contacted Lilly concerning the completion of the work listed in the July 15, 2002, statement of work. On information and belief, Welch and WCI had submitted a proposal to Lilly for the identical work by that time. On information and belief, Welch and WCI learned of this opportunity to conduct further work for Lilly solely due to Welch's prior employment with IMS Health. On information and belief, Lilly did not make this opportunity publicly known. On information and belief, Lilly has awarded

Welch and WCI the balance of the work listed in the July 15, 2002, statement of work, thereby causing IMS Health lost income of approximately $11,700.

30. On information and belief, the July 15, 2002, Lilly engagement stemmed from IMS Health's "Body Pharma" presentations addressing, mainlining or integrating IMS Health data into a client's specific environment. On information and belief, Welch had access to and knowledge of such materials, and was the point person from IMS Health assigned to the Lilly Project. On information and belief, Welch and WCI learned of the opportunity for this type of work at Lilly, and the appropriate contacts at Lilly, through Welch's previous employment at IMS Health and IMS Health's Client Contact List.

31. On information and belief, the July 15, 2002, Lilly engagement represented only a first step in a significantly larger business opportunity for IMS Health with Lilly. Later steps would involve the construction of data repositories suitable to store data from multiple data suppliers that could be accessed by each of the several Lilly manufacturing processes, at a total cost of approximately $400,000. On information and belief, Welch and WCI learned of the opportunity for this expanded work at Lilly, and the appropriate contacts at Lilly, through Welch's previous employment at IMS Health and IMS Health's Client Contact List.

32. In December 2002, counsel for IMS Health wrote to Mr. Welch and demanded that he cease from certain activities, including working on Lilly projects pertaining to manufacturing operations. Mr. Welch has not responded to this demand.

## COUNT I
### (Federal Unfair Competition against Defendants Welch and WCI)

33. This cause of action is for unfair competition under the United States Trademark (Lanham) Act of 1946, as amended, 15 U.S.C. §§ 1117, 1121, and 1125 and 28 U.S.C. §§ 1331 and 1338.

Doc. #661603v.1

34. IMS Health repeats and incorporates by reference all of the averments of paragraphs 1 through 32 as if fully set forth herein.

35. The false and misleading representations and descriptions of fact made by WCI and Welch as alleged hereinabove, including the transmission of WCI proposals to IMS Health customers using an IMS Health electronic mail address, constitute false and misleading descriptions of fact and false and misleading representations of fact, which are likely to cause IMS Health great injury to its business, goodwill, reputation, customer relations and profits.

36. IMS Health has no adequate remedy at law against Defendants for unfair competition and, unless Defendants are preliminarily and permanently enjoined by this Court, IMS Health will continue to suffer irreparable harm.

## COUNT II
**(Misappropriation and Misuse of Trade Secrets against Defendants Welch and WCI)**

37. IMS Health repeats and incorporates by reference all of the averments of paragraphs 1 through 32 as if fully set forth herein.

38. The Client Contact List is a trade secret owned by IMS Health.

39. The Client Contact List is a valuable and important part of IMS Health's business, which gives IMS Health an advantage over its competitors, none of whom have access to the Database.

40. IMS Health has developed the Client Contact List over a long period of time, owns the Client Contact List, and as such has the exclusive right to the use and benefit of the Client Contact List.

41. Defendants have misappropriated portions of the Client Contact List for their own use by generating electronic mailings utilizing the contacts appearing within the Client Contact List.

42. IMS Health has been damaged and prejudiced by Defendants' misappropriation and misuse of the Client Contact List.

43. Defendants' misappropriation and misuse of IMS Health's Client Contact List has been willful and deliberate.

44. By reason of the foregoing misappropriation and misuse of trade secrets, IMS Health has been damaged in an amount not less that $400,000 plus interest to be determined at trial.

## COUNT III
### (Breach of Contract against Defendant Welch)

45. IMS Health repeats and incorporates by reference all of the averments of paragraphs 1 through 32 as if fully set forth herein.

46. In accordance with the contract, Welch entered into with IMS Health, he was obligated in writing not to disclose or use for his own benefit any confidential information of IMS Health, including but not limited to, the Client Contact List.

47. Welch substantially and materially breached his contract with IMS Health by misappropriating and misusing the IMS Health Client Contact List to the benefit of himself and WCI.

48. Welch's breach of his contract with IMS Health has been willful and deliberate.

49. By reason of the foregoing breaches, IMS Health has been damaged in an amount not less than $400,000 plus interest to be determined at trial.

Doc. #661603v.1

## COUNT IV
### (Breach of Fiduciary Duty against Defendant Welch)

50. IMS Health repeats and incorporates by reference all of the averments of paragraphs 1 through 32 as if fully set forth herein.

51. As an employee of IMS Health, Defendant Welch was placed in a position of trust and confidence within IMS Health and owed IMS Health a fiduciary duty of care not to take or misuse any confidential or trade secret information of IMS Health.

52. By using IMS Health confidential information, and specifically the Client Contact List, to its own advantage at the expense of IMS Health, Defendant Welch breached his fiduciary duty to IMS Health.

53. Welch's breach of his fiduciary duties have been willful and deliberate.

54. By reason of the foregoing breach, IMS Health has been damaged in an amount not less than $400,000 plus interest to be determined at trial.

WHEREFORE, Plaintiff, IMS Health, prays for relief as follows:

(a) Judgment in favor of Plaintiff, IMS Health, on all counts;

(b) Judgment holding each Defendant jointly and severably liable to Plaintiff, IMS Health, for an amount not less than $400,000 plus interest to be determined at trial;

(c) An order of accounting and payment of all compensatory damages owed to Plaintiff, IMS Health, up through entry of final judgment, plus interest;

(d) Judgment holding each Defendant jointly and severally liable to Plaintiff, IMS Health, for an amount to be determined covering IMS Health's incidental damages, including but not limited to the injury suffered to IMS Health's good will, plus interest;

Doc. #661603v.1

(e) A permanent injunction order requiring the immediate and permanent cessation of any and all use by Defendants of the Client Contact List, including but not limited to soliciting business from any name listed therein;

(f) Judgment awarding Plaintiff, IMS Health, punitive damages in an amount at least treble the amount of compensatory damages awarded;

(g) An award to Plaintiff, IMS Health, of its costs, disbursements, and attorneys fees incurred in this matter; and

(h) An award to Plaintiff, IMS Health, of such other and further equitable and legal relief as the Court may deem just and proper in the circumstances.

*/s/ Lee A. Rosengard*

Lee A. Rosengard
STRADLEY, RONON, STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia PA  19103-7098
Tel: 215-564-8000
Fax: 215-564-8120

Attorneys for Plaintiff,
IMS Health Incorporated

OF COUNSEL:

Robert C. Scheinfeld
Paul A. Ragusa
BAKER BOTTS, L.L.P.
30 Rockefeller Plaza
New York, NY  10112
(212) 408-2588

Doc. #661603v.1